**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION**

| | |
|---|---|
| **LESTER ARNOLD CLOUSE,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **Case No. 2:12-cv-0114** |
| ) | |
| **BRUCE WESTBROOKS, Warden,** ) | **Judge Sharp** |
| **Correctional Complex,** ) | |
| ) | |
| **Respondent.** ) | |

## MEMORANDUM OPINION

Before the Court is petitioner Lester Arnold Clouse's petition for habeas corpus relief 28 U.S.C. §

2254 (ECF No. 2). The petitioner is presently incarcerated at the Bledsoe County Correctional Complex

(formerly Southeastern Tennessee Regional Correctional Facility) in Pikeville, Tennessee. For the

reasons set forth herein, the petition will be denied.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

On December 11, 2001, Clouse was convicted by a jury on twelve counts of setting fire to land in

Putnam County and, after a hearing conducted on March 8, 2002, was sentenced to six years on each of

the twelve counts, with some of the counts running consecutively and others running concurrently,

resulting in a total effective sentence of eighteen years' incarceration. His conviction and sentence were

confirmed on direct appeal by the Tennessee Court of Criminal Appeals. *See State v. Clouse*, No.

M2002-01880-CCA-R3-CD (Tenn. Ct. Crim. App. Feb. 2, 2004).[1] The Tennessee Supreme Court denied

Clouse's application for permission to appeal. *State v. Clouse*, No. M2002-01880-SC-R11-CD, 2004

Tenn. LEXIS 779 (Tenn. Sept. 7, 2004). Clouse filed a petition for post-conviction relief in the state court

on January 27, 2005. (ECF No. 18-9, at 4.) The petition was denied and that denial was affirmed. *Clouse

v. State*, No. M2009-01042-CCA-R3-PC, 2011 WL 2671521 (Tenn. Ct. Crim. App. July 7, 2011).

---

[1] This opinion is not available on-line through either Westlaw or Lexis. The respondent apparently
intended to make it available to this Court in an appendix to be filed with his answer, but, despite
references thereto in the respondent's brief, no such appendix was filed. The opinion is located within the
documents filed with the respondent's notice of filing, at ECF No. 18-11, pages 37–40, apparently as an
exhibit to the state's post-conviction brief to the Tennessee Court of Criminal Appeals.

The respondent concedes that Clouse's petition in this Court, filed April 30, 2012, is timely. In accordance with the initial order entered by this Court on December 20, 2012 (ECF No. 10), the respondent filed an answer to the petition (ECF No. 20) along with a copy of the state-court record. The petitioner submitted a reply in support of his petition (ECF No. 23). The petition is ripe for resolution.

Upon consideration of the petition, the answer, the reply, and the entire record, it appears that an evidentiary hearing is not needed in this matter. The Court will therefore dispose of the petition as the law and justice require. Rule 8(a), Rules Gov'g § 2254 Cases.

## II. STATE COURT PROCEEDINGS

### A. Evidence Presented at Trial

The facts presented at trial were summarized by the Tennessee Court of Criminal Appeals as follows:[2]

> Officer James Gibbons testified that on October 26, 1999, the Putnam County Sheriff's Department received several reports of fires. The fires where close to the side of the road, along the ditch line. Some of the fires were close together, and some were several hundred yards apart. The fires got smaller as Officer Gibbons traveled along Mt. Herman Road. Officer Gibbons received a report that someone driving a small black car had set the fires. Officer Gibbons stopped a vehicle matching that description on Mt. Herman Road in White County, approximately one mile from the Putnam County line. Defendant was a passenger in the vehicle. While Officer Gibbons ran a driver's license history on the driver of the vehicle, he observed Defendant "fumbling around in the back seat of the vehicle." Defendant "seemed real nervous." Officer Gibbons arrested Defendant and the driver of the vehicle. Officer Gibbons did not observe any more fires after Defendant was taken into custody.

> Officer Bill Harris of the Putnam County Sheriff's Office testified that he was dispatched to an area where several fires were burning along Bunker Hill Road. Officer Gibbons had stopped a small black sports car when Officer Harris arrived on the scene. Officer Harris testified that Defendant was the passenger in that vehicle. Officer Harris described Defendant as uncooperative and "very nervous." Matches were found inside the vehicle.

> Kimberly Sells lived approximately one-half mile from the Putnam County line in White County. She observed a small black car driving south on Mt. Herman Road near her residence at around 4:30 p.m. on October 26, 1999. The vehicle was coming from Putnam County. Ms. Sells testified that the passenger in the vehicle rolled down the car window and yelled, "Hey, baby." Ms. Sells identified Defendant as the passenger in the

---

[2] State appellate court findings of fact can constitute factual findings in a habeas action. *See, e.g.*, *Girts v. Yanai*, 501 F.3d 743, 749 (6th Cir. 2007); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

vehicle. As the vehicle drove by, Ms. Sells observed a small fire in the ditch line just north of her residence. Ms. Sells observed another small fire south of her residence just as the car crested a hill. Both fires were on the right side of the road if traveling south. Shortly thereafter, Ms. Sells observed several law enforcement vehicles in pursuit of the vehicle. On the following day, Ms. Sells gave a statement to police.

Jerry Stone owned property on Bob Bullock Road in South Putnam County one half mile from the White County line. On October 26, 1999, Mr. Stone returned home from work sometime between 4:00 and 4:15 p.m. He observed a fire in his yard close to the road.

Wendell Rhule testified that on October 26, 1999, at approximately 4:00 p.m., he observed a small dark colored car stop at Howard Cemetery on Burgess Mill Road in Putnam County. Mr. Rhule saw an individual get out of the vehicle and set a small fire. The vehicle then drove past Mr. Rhule, and Mr. Rhule observed someone from that vehicle start another fire on the right side of the road. Mr. Rhule could not identify the individual that he saw start the fires.

Adelle Bennett testified that a wooded area of her property on Allen Road in Putnam County was on fire at around 4:00 p.m. on October 26, 1999. Several fires were set along the roadside in front of Ms. Bennett's residence.

Donnie Julian testified that he owned property on Stone Seminary Road in Putnam County approximately one-half mile from the White County line. On October 26, 1999, sometime between 3:30 and 4:30 p.m., two fires were set on each corner of his property on the side of the road. The fires burned several pine trees. Mr. Julian saw a dark colored car leaving the scene of the fires.

Bill Gill noticed two fires burning on his property on Mr. Herman Road at approximately 3:00 p.m. on October 26, 1999.

James League of the Department of Agriculture Division of Forestry testified that the conditions on October 26, 1999, were very dry. Mr. League did not issue any burn permits on that day. Mr. League also testified that two fires were set on state owned property. A fire burned at the intersection of Wendell Cliff Road and Burgess Falls Road, and another burned at Ditty Road and Highway 56.

Willard Nash testified that a fire burned on his property on Baxter Road. The fire destroyed over one-half acre and about twenty bales of hay. Mr. Nash testified that he knew Defendant. Defendant lived on Cookeville Boat Dock Road, approximately four or five miles from Mr. Nash's property. Mr. Nash saw the fire at approximately 2:30 or 3:00 p.m.

Glenn Whittaker owned 83 acres in South Putnam County. Mr. Whittaker was out of town on October 26, 1999, when one field on his property was damaged by fire, and 60 large rolls of hay were destroyed.

Bricey Wright testified that 20 acres burned on her property on Rock Island Road, just off Burgess Falls Road.

Roger Julian testified that a fire was set on his property in a field adjacent to Old Sparta Road. Mr. Julian also noticed several fires on Bob Bullock Road near his property.

Robert Winchester owned property on Jones Road and Rock Island Road. Several pine trees burned along the road. Mr. Winchester knew Defendant and considered himself to be "friends" with Defendant; however, Mr. Winchester believed that

Defendant did not know where his property was.

A fire burned seven or eight acres along the edge of the road on Gary Evins' property on Short Hill Road.

Guy Barbutis, a former sergeant for the Erie-Lakawanna Railroad Police Department, testified for the defense in this case. Mr. Barbutis was Defendant's neighbor. On October 26, 1999, Mr. Barbutis walked his dog and checked his mailbox between 2:30 and 3:30 p.m. Defendant operated a junk yard, and Mr. Barbutis saw Defendant handling a piece of glass. Mr. Barbutis waved at Defendant and then went home. There was no testimony as to the distance between Defendant's house and the location of the fires. Defendant did not testify.

*State v. Clouse*, No. M2002-01880-CCA-R3-CD, slip op. at 1–3 (Tenn. Ct. Crim. App. Feb. 2, 2004) (ECF No. 18-11, at 37–40.)

The only issue presented by Clouse to the Tennessee Court of Criminal Appeals in his direct appeal was whether the evidence presented at trial was sufficient to support a guilty verdict. (Appellant's Brief, ECF No. 32-2, at 5, 13–14.) The Tennessee appellate court rejected that challenge and affirmed the conviction. In reaching its conclusion, the court noted that, although the evidence offered at Clouse's trial was entirely circumstantial in nature, "circumstantial evidence alone may be sufficient to support a conviction," *State v. Clouse*, slip. op. at 3 (citations omitted), and found that, viewed in the light most favorable to the state, the evidence was sufficient to permit a reasonable trier of fact to conclude that Clouse was guilty of the crimes charged. *Id.*

**B.      Post-Conviction Proceedings**

After his conviction, Clouse filed a timely petition for post-conviction relief. In his initial *pro se* petition and in the amended petition for post-conviction relief filed by his post-conviction attorney, Clouse raised numerous issues, including claims based on the alleged ineffective-assistance of counsel at trial and on appeal, prosecutorial misconduct, and that the conviction violated the double-jeopardy prohibition in the Fifth Amendment, among others. (Petition for Relief from Post Conviction [sic] or Sentence, ECF No. 18-9, at 4–30; Amended Petition for Relief from Conviction or Sentence and Memorandum in Support thereof, ECF No. 18-9, at 36–67.) A hearing before the trial judge, the Honorable Lillie Ann Sells, took place on January 30, 2006, at the conclusion of which Judge Sells made oral findings on the record and denied the petition. Specifically, Judge Sells summarized the evidence that had been presented at trial and reiterated her previous finding that the evidence was sufficient to support the verdict. (ECF No. 32-1,

at 91–92.) She rejected Clouse's double-jeopardy argument on the basis that the defendant had been charged and tried in three separate trials for setting different fires in three separate counties, on the land of several different victims. (*Id.* at 92.) She found based on the evidence presented at trial and the testimony of Clouse's trial counsel at the post-conviction hearing that trial counsel was not ineffective for failing to present alibi witnesses or to introduce evidence of an unopened box of matches found in the car when Clouse was arrested. (*Id.* at 93–94.) And she ruled that there was no evidence that the prosecutor had withheld evidence or otherwise engaged in misconduct. (*Id.* at 95.) Judge Sells specifically stated that she was unsure whether she had "hit all the issues raised" but that she would "obviously" write a detailed opinion addressing all the issues raised and overruling the post-conviction. (*Id.* at 97.) Sometime thereafter, however, Judge Sells' bid for re-election was defeated, and she never entered a written order disposing of the petition.

The petitioner nonetheless attempted to appeal the rejection of his post-conviction petition, but the Tennessee Court of Criminal Appeals dismissed the appeal for lack of jurisdiction on the basis that a final order disposing of the petition had never been entered. *Clouse v. State*, No. M2006-00458-CCA-R3-PC, *Slip op.* (Tenn. Ct. Crim. App. Feb. 22, 2007). The matter was remanded for entry of a final order, and the Honorable Allen W. Wallace, Senior Judge, was designated to hear the matter.

A second post-conviction hearing was conducted on February 22, 2008, and Judge Wallace entered a written order dated March 4, 2008, in which he stated, in full, as follows:

> This cause came to be heard on February 22, 2008 in White County, Tennessee on the petition for post conviction relief filed on behalf of the defendant. The venue for this hearing was waived from Putnam County, Tennessee to White County, Tennessee. Honorable Judge Allen W. Wallace was assigned to the case after Judge Lillie Ann Sells had held the original hearing on January 30, 2006. Judge Sells had made findings but no order was entered.

> Judge Wallace, having reviewed the entire record, including the trial transcripts concluded that the defendant's counsel at trial had done a good job and was not ineffective. Judge Wallace adopted the findings of Judge Sells, which are part of the previous post conviction hearing.

> At one point during the hearing the defendant became disruptive and had to be removed from the courtroom. The Court determined the defendant had waived his presence and concluded the hearing.

> IT IS THEREFORE ORDERED.

> This the 28th day of February 2008.

(Post-conviction Order, ECF No. 18-9, at 88.)

In his appellate post-conviction brief, Clouse, through counsel, raised only two issues: (1) that he was entitled to a new post-conviction hearing—not a new trial—on the grounds that "the post-conviction court did not address all the issues he raised in his petition for post-conviction relief" and (2) that he was entitled to a new post-conviction hearing because the trial court did not memorialize its findings of fact and conclusions of law as required by statute. (Appellant's Post-Conviction Brief, at 1, ECF No. 18-10, at 5.)

The Tennessee Court of Criminal Appeals, "[a]fter reviewing the entire record, including the transcript of the original post-conviction hearing," concluded that the order filed by Judge Wallace was sufficient for appellate review insofar as it adopted the oral findings of fact made on the record by Judge Sells. *Clouse v. State*, No. M2009-01042-CCA-R3-PC, 2011 WL 2671521, at *1 (Tenn. Ct. Crim. App. July 7, 2011). It further found that the petitioner had waived all other issues "for failing to file an adequate record for review and for failing to provide appropriate citations to the record," and therefore affirmed the judgment denying post-conviction relief. *Id.*

III.    **ISSUES PRESENTED FOR REVIEW**

In his present petition, Clouse asserts the following claims for relief, most of which are adopted directly from his original state-court petition for post-conviction relief:

(1) The petitioner was denied effective assistance of counsel in violation of the Sixth Amendment, insofar as counsel failed to

(a)  file a motion for discovery;

(b)  file a motion for change of venue;

(c)  interview witnesses who might have been favorable to the defense or provided an alibi;

(d)  move to continue the trial on the basis of the unavailability or illness of two witnesses favorable to the defense;

(f)  file a pretrial "*Blockburger* motion" under *Blockburger v. United States*, 284 U.S. 299 (1932);

(g)  call Michael Shane Carter to testify;

(h)  secure evidence that would show the state violated the petitioner's Fourteenth Amendment right "due to a violation of a seized evidence of the car because they never had probable cause" (ECF No. 2, at 17);

(i)  use the transcript from the plaintiff's first trial on related charges of setting fires in a

different county at his second trial in Putnam County; and

    (j)   participate in the post-conviction proceedings.

(2)   The prosecutor engaged in prosecutorial misconduct when he

    (a)  withheld exculpatory evidence by not calling Michael S. Carter to testify;

    (b)  withheld Tammy Winchester's testimony; and

    (c)  violated Rule 8 of the Tennessee Rules of Criminal Procedure by not joining all the offenses for one trial (instead of three trials in three counties), and continued to pursue the trial in Putnam County after the petitioner was acquitted in the Dekalb County out of "vindictiveness," in violation of *State v. Vukelich*, No. M1999-00618-CCA-R3-CD, 2001 WL 1044617 (Tenn. Ct. Crim. App. Sept. 11, 2001), and *Neely v. State*, 356 S.W.2d 401, 403 (Tenn. 1962);

(3)   The trial court violated the petitioner's right to due process by

    (a)  failing to rule on the State's motion for "joining the offenses" under "Tenn. Rule 8(a)," which resulted in the petitioner's being tried multiple times on the same offenses, in violation of the prohibition of "double jeopardy" (ECF No. 2, at 18);

    (b)  exercising jurisdiction over the petitioner's criminal case even though the charges were related to and should have been tried with the Dekalb County charges (on which the petitioner was acquitted); and

    (c)  violating the petitioner's rights under Rule 18 of the Tennessee Rules of Criminal Procedure and Tenn. Code Ann. § 39-11-103.

(4)   The state violated the ruling in *State v. Huskey*, 66 S.W.3d 905 (Tenn. Ct. Crim. App. 2001);

(5)   The state violated its duty to ensure that the petitioner's White County trial record was incorporated as part of his Putnam County trial record;

(6)   The petitioner's arrest was without probable cause, in violation of the Fourth Amendment;

(7)   The line-up procedures violated the petitioner's right to due process under *United States v. Wade*, 388 U.S. 218 (1967), *Wong Sun v. United States*, 371 U.S. 471 (1963), and other Supreme Court precedent;

(8)   The petitioner's conviction violated the Fifth Amendment prohibition against double jeopardy; and

(9)   "Post conviction counsel was ineffective for waiving the petition for post-conviction." (ECF No. 2, at 17.)

(ECF No. 2, at 16–24.)

## IV.   STANDARD OF REVIEW

A federal district court will not entertain a petition for a writ of habeas corpus unless the petitioner has first exhausted all available state-court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1). While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine which

promotes comity between the states and the federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his claims to every available level of the state court system. *Rose v. Lundy*, 455 U.S. 509, 518–20 (1982); *see also Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("[A] federal habeas petitioner . . . [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim."). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Once his federal claims have been raised *in the highest state court available*, the exhaustion requirement is satisfied, even if that court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990).[3]

A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state-court remedies with respect to the claims he presents for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987) (citation omitted). If a habeas petitioner retains the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(c). Ordinarily, habeas petitions containing unexhausted claims are dismissed without prejudice in order to permit the petitioner the opportunity to pursue them in state court. *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) (citing *Rose*, 455 U.S. at 518, 520–22); *see also Rhines v. Weber*, 544 U.S. 269 (2005) (reconfirming the continued relevance of *Rose* under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")).

If, however, an unexhausted claim would be procedurally barred under state law, for instance by statutes of limitations or state rules barring successive petitions, then the claim is deemed exhausted (because no further state review is available) but procedurally defaulted, and may not be considered by the federal court on habeas review except under extraordinary circumstances. *Alley v. Bell*, 307 F.3d 380, 385–86 (6th Cir. 2002) (citations omitted); *In re Cook*, 215 F.3d 606, 607–08 (6th Cir. 2000). Specifically,

---

[3] In Tennessee, review by the state Supreme Court is not required for exhaustion. Instead, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies available for that claim.'" *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. S. Ct. R. 39).

in order to obtain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both cause for the procedural default and actual prejudice resulting from the alleged constitutional errors. or alternatively that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), *abrogated on other grounds by Martinez v. Ryan*, --- U.S. ----, 132 S. Ct. 1309 (2012).

**V.     ANALYSIS AND DISCUSSION**

The respondent argues that the petitioner's claims are procedurally defaulted and unreviewable, because Clouse failed to present any of the claims to the state court on either direct appeal or in his post-conviction appeal. In his reply, the petitioner argues generally that his claims were presented in his original petition for post-conviction relief in the state trial court.

As set forth above, however, for a claim to be fully exhausted, it must be presented at every level of the state-court system. *Wagner v. Smith*, 581 F.3d 410, 414 (5th Cir. 2009). Thus, an issue that was raised in post-conviction proceedings at the trial-court level but not presented to the appellate court has not been fully exhausted for purposes of habeas review, because the state appellate court was not given the opportunity to address the issue. *Id.*

In this case, the only issue raised and exhausted on direct appeal was a challenge to the sufficiency of the evidence. The petitioner does not claim here that the state court's resolution of that issue violated his constitutional rights.

As set forth above, the petitioner raised numerous claims in his initial and amended petitions for post-conviction relief in the state trial court, but the only issues presented in the petitioner's appeal of the trial court's denial of post-conviction relief were that the trial court did not enter written findings of fact and conclusions of law or address all the issues raised in his post-conviction petition. The Tennessee Court of Criminal Appeals found that Judge Wallace's order satisfied the statutory requirement of written findings and conclusions because it adopted Judge Sells' oral findings and conclusions that are preserved in the transcript of the first post-conviction hearing. The court rejected the second claim as waived by counsel's failure to make a complete record or to make appropriate references to the record. *Clouse v. State*, 2011 WL 2671521, at *2–3.

Clouse does not challenge those rulings here. Instead, he presents all the same claims that were

contained in his original and amended petitions for post-conviction relief. As a result of Clouse's post-conviction attorney's failure to present those claims to the Tennessee Court of Criminal Appeals, however, Clouse's claims for relief are procedurally defaulted and barred from review by this Court unless the petitioner can establish cause for the default and prejudice from a violation of federal law, or alternatively that a failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Clouse did not supplement his claims of constitutional error with a colorable showing of actual innocence so as to demonstrate a fundamental miscarriage of justice that would permit review of his defaulted claims without regard to a showing of cause and prejudice. *Murray*, 477 U.S. at 496. The question, then, is whether the petitioner has made the requisite showing of cause for his procedural default, and resulting prejudice. In order to establish cause, a habeas corpus petitioner must show that "some objective factor external to the defense" prevented the petitioner's compliance with a state procedural rule. *Id.* at 488. The petitioner here does not actually acknowledge that his claims were defaulted, but he does claim, somewhat vaguely, that his post-conviction counsel was ineffective for waiving "the petition for post-conviction." (ECF No. 2, at 17.) The Court construes this assertion as a claim that the cause for the procedural default in this case is Clouse's post-conviction attorney's ineffective assistance during Clouse's appeal of the denial of post-conviction relief.

In *Coleman v. Thompson*, the Supreme Court held that there is no constitutional right to counsel during an appeal from the state post-conviction trial-court judgment. *Coleman*, 501 U.S. at 755. Thus, because a habeas petitioner has no constitutional right to an attorney for purposes of appealing the denial of a state post-conviction petition, his attorney's negligence in pursuing that appeal will not amount to constitutional error and likewise cannot constitute "cause" sufficient to overcome the procedural default as to a habeas petitioner's claims in federal court. *See id.* at 757 ("Because Coleman had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of Coleman's claims in state court cannot constitute cause to excuse the default in federal habeas.").

Recently, in *Martinez v. Ryan*, the Supreme Court "qualifie[d] *Coleman* by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 132 S. Ct. 1315.

The Court expressly distinguished *Martinez* on the facts from *Coleman*, however. In *Coleman*, as here, the alleged ineffective assistance of post-conviction counsel occurred at the appellate level. *See Coleman*, 501 U.S. at 728–29 (holding that claims raised in the federal habeas petition were procedurally defaulted because they had not been reviewed by the state appellate court, where Coleman's appeal of the denial of his state post-conviction petition had been dismissed on procedural grounds on the basis that the notice of appeal had been filed three days late). In this case, Clouse does not contend that his counsel was ineffective at the initial-review level of his post-conviction proceedings, but at the appellate level. The narrow exception carved out in *Martinez* for the purpose of "protect[ing] prisoners with a potentially legitimate claim of ineffective assistance of trial counsel," *Martinez*, 132 S. Ct. at 1315, therefore does not apply in this case.

In short, Clouse's claim that his state post-conviction counsel was ineffective in presenting Clouse's claims to the Tennessee Court of Criminal Appeal does not serve as "cause" to overcome the procedural default in this case. Because Clouse has not established cause for the procedural default, the Court is not called upon to consider the question of prejudice.

## VI. CONCLUSION

In sum, Clouse's claims in his present petition are all procedurally defaulted, and Clouse has not established cause and prejudice to overcome the default, or that a miscarriage of justice will result if his claims are not reviewed. Accordingly, Clouse's petition will be denied and dismissed.

The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Gov'g § 2254 Cases. The petitioner may not take an appeal unless a district or circuit judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the COA must "indicate which specific issue or issues satisfy the [required] showing . . . ." 28 U.S.C. § 2253(c)(3). A "substantial showing" is made when the petitioner demonstrates that "'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "[A] COA does not require a showing that the appeal will succeed."

*Miller-El*, 537 U.S. at 337. Courts should not issue a COA as a matter of course. *Id.*

In this case, the petition only presents claims that are entirely barred from review by procedural default. Because an appeal by the petitioner on any of the issues raised in this petition would not deserve attention, the Court will deny a COA.

An appropriate order is filed herewith.

Kevin H. Sharp
United States District Judge